IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――

| | |
|---|---|
| JAMES INZINGA, THELMA JOY, SUSAN LAKE, DAVID MASON, JOHNNA RAIMONDI, and THERESA SCIRA on behalf of themselves and all Others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>The NEW YORK STATE DEPARTMENT OF LABOR, and ROBERTA REARDON, as Commissioner of the New York State Department of Labor.<br><br>    Defendants. | Case No. |

―――――――――――――――――――――

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**PRELIMINARY STATEMENT**

1. Plaintiffs bring this action on behalf of themselves and all non-professional summer school workers across New York State who lost their jobs due to the COVID-19 pandemic and public health emergency (herein referred to as "Pandemic") and were improperly denied unemployment benefits by defendants.

2. In late June 2020, Plaintiffs James Inzinga, Thelma Joy, Susan Lake, David Mason, Johnna Raimondi, and Theresa Scira lost their summer school employment due to school closures caused by the Pandemic. At the suggestion of their union, they each applied for and received needed unemployment benefits until they returned to work when schools reopened in September 2020.

3.   Weeks and months after plaintiffs had returned to work, defendants mailed them a "Notice of Determination of Ineligibility or Disqualification," which, in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution, failed to provide plaintiffs with sufficient information to understand the reasons for defendants' action.

4.   Defendants' ineligibility determinations contravened federal law and policy and denied plaintiffs their unemployment benefits in violation of Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504, and the Fourteenth Amendment to the United States Constitution.

5.   Plaintiffs seek a judicial Order declaring defendants' policies and practices unlawful; enjoining defendants from failing to comply with federal statutes and directives when redetermining plaintiffs' eligibility for unemployment benefits; and providing plaintiffs with adequate eligibility notices pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution; Title III of the Social Security Act, 42 U.S.C. § 503(a)(1); the CARES Act, 15 U.S.C. § 9021 et seq. and 15 U.S.C. 9023 et seq.; the Stafford Act, 42 U.S.C. §5174 (e)(2); and 42 U.S.C. § 1983.

## I. JURISDICTION AND VENUE

6.   This court has jurisdiction over all claims against defendants in this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (4).

7.   Plaintiffs' requests for injunctive and declaratory relief are authorized by 28 U.S.C. §§2201 and 2202.

8.   Plaintiffs seek attorneys' fees and costs pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

9.   Venue in this court is proper under 28 U.S.C. §1391(b). All or a substantial part of the acts giving rise to plaintiffs' claims occurred in the Western District of New York.

## II. PLAINTIFFS AND DEFENDANTS

### A. Plaintiffs

10. Plaintiff James Inzinga is 81 years old and resides in Greece, New York.

11. Plaintiff Inzinga receives Social Security Retirement benefits which are insufficient to support himself and his wife, and to make ends meet he has worked as a bus driver for the Greece Central School District for the last seven years.

12. Plaintiff Inzinga worked during previous summers driving children to and from their summer school programming and planned to continue this work in the summer of 2020.

13. In June 2020, Plaintiff Inzinga learned that the Greece Central School District schools would be physically closed during the summer of 2020, and that there was no work for him.

14. Without work, and with the encouragement of his union, Plaintiff Inzinga applied for and received unemployment benefits over the summer months.

15. Plaintiff Inzinga was recently found ineligible for these unemployment benefits by a New York State administrative law judge, and he has appealed this decision to the New York Unemployment Appeal Board, where his appeal is now pending.

16. Plaintiff Thelma Joy is 72 years old and resides in Rochester, N.Y.

17. Plaintiff Joy has worked for the Greece Central School District for 27 years, first as a bus attendant, and now as a bus driver.

18. Plaintiff Joy also intended to work as a bus driver during the summer months transporting children to and from summer school, but her job was eliminated due to the Pandemic and school closures in 2020.

19. Without work, and with the encouragement of her union, Plaintiff Joy applied for and received unemployment benefits over the summer months.

3

20. Plaintiff Joy was recently found ineligible for these unemployment benefits by a New York State administrative law judge, and she has appealed this decision to the New York Unemployment Appeal Board, where her appeal is now pending.

21. Plaintiff Susan Lake is 52 years old and lives in Greece, New York.

22. Plaintiff Lake supports herself and her parents by working for the Greece Central School District for the past 25 years, first as a bus driver and now as a bus attendant.

23. As in the previous summers, Plaintiff Lake planned to work as a bus attendant during the Greece Central School District summer session, but her job was eliminated due to the Pandemic.

24. Needing income to support herself and her parents, and at the encouragement of her union, Plaintiff Lake applied for and received unemployment benefits during the summer months.

25. In February of 2021, Plaintiff Lake was found ineligible for these unemployment benefits by the New York State Department of Labor. She requested a hearing which she did not attend due to the lack of counsel, however she has sought another hearing now that she has successfully found legal representation.

26. Plaintiff David Mason is 72 years old and lives in North Greece, New York.

27. For the last 23 years, Plaintiff Mason has supported himself by working for the Greece Central School District as a school bus driver.

28. Plaintiff Mason planned to work as a bus driver transporting children during the Greece Central School District summer session, but his job was eliminated by the Pandemic.

29. Needing income and with the encouragement of his union, Plaintiff Mason applied for and received unemployment benefits over the summer months.

30.    Plaintiff Mason was recently found ineligible for these unemployment benefits by the New York State Department of Labor, and he has requested a hearing before an administrative law judge, which is now pending.

31.    Plaintiff Johnna Raimondi is 56 years old and lives in Rochester, NY with her husband, who is disabled and receives Social Security Disability Income.

32.    For the last 20 years, Plaintiff Raimondi has served as a bus attendant working with special education students attending school in the Greece Central School District.

33.    Plaintiff Raimondi worked previous summers supervising children traveling to and from their summer school programming, and she relies on this work as a bus attendant to support herself and her family.

34.    In June 2020, Plaintiff Raimondi learned that the Greece Central School District schools would be physically closed during the summer of 2020, and that there would be no work for her.

35.    Without work, and with the encouragement of her union, Plaintiff Raimondi applied for and received unemployment benefits over the summer months.

36.    Plaintiff Raimondi was recently found ineligible for these unemployment benefits by a New York State administrative law judge, and she has appealed this decision to the New York Unemployment Appeal Board, where her appeal is now pending.

37.    Plaintiff Theresa Scira is 76 years old and lives with her disabled husband in the Town of Greece, New York.

38.    Plaintiff Scira has been employed as a bus attendant for the Greece Central School District for 10 years, transporting special needs children between their homes and schools.

39.    In the spring months of 2020, Plaintiff Scira planned to work during the summer school session as a bus drive to supplement her household income, and in June 2020, she learned that there would be no summer work for her.

40.    At the suggestion of her union, in late June 2020, Plaintiff Scira applied for unemployment benefits and received them throughout the summer.

41.    In early January 2021, the New York State Department of Labor notified Plaintiff Scira that she is ineligible for the unemployment benefits she received last summer, and she has requested a hearing before an administrative law judge, which is now pending.

**B.  Defendants**

42.    Defendant New York State Department of Labor (NYSDOL) is a department of the State of New York established pursuant to Chapter 31 of the laws of the State of New York.

43.    Defendant Roberta Reardon is the Commissioner of Labor for the State of New York.

**III. STATUTORY AND REGULATORY ELIGIBILTY FRAMEWORK**

**A.  Title III of the Social Security Act of 1935**

44.    Congress established the federal-state cooperative, state-administered unemployment insurance program to provide a substitute for wages lost during a period of unemployment to workers who lost their employment through no fault of their own. H.R. Rep. No. 615, 74th Cong., 1st Sess., 7 (1935).

45.    The purpose of unemployment insurance benefits is to provide prompt replacement of wages to stabilize the economic purchasing power of workers until they found employment so they would not have to resort to public welfare programs. H.R. Rep. No. 615, 74th Cong., 1st Sess., 7 (1935).

46. Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504, provides payments to the states to finance the administration of these unemployment insurance programs.

47. Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504 and 20 C.F.R. § 640.3(a) require that state unemployment compensation programs "provide for such methods of administration as will reasonably insure the full payment of unemployment benefits to eligible claimants when due and with the greatest promptness that is administratively feasible."

**B. Plaintiffs' Eligibility for Unemployment Benefits**

48. The Federal Unemployment Tax Act ("FUTA") requires, as a condition for granting federal unemployment tax credits to employers in each state, that the state unemployment compensation law conform to certain minimum federal requirements. *See* 26 U.S.C. § 3304(a).

49. With one exception, plaintiffs, who work as bus drivers and bus attendants, and others such as cafeteria workers and other non-professional school employees, are entitled to unemployment compensation benefits under the same terms and conditions as other unemployed workers who lost their jobs through no fault of their own and are ready, willing, and able to work. 26 U.S.C. § 3304(a)(6)(A)(ii)(I).

50. This statute permits the denial of unemployment benefits to plaintiffs between "two successive academic years or terms… if such individual performs such services in the first of such academic years or terms and there is a *reasonable assurance* that such individual will perform such services in the second of such academic years or terms." 26 U.S.C. § 3304(a)(6)(A)(ii)(I) (emphasis supplied).

51.   To comply and conform with this federal unemployment law requirement, New York State enacted Labor Law § 590(11) in 1977, echoing the same eligibility terms set forth in the federal statute.

52.   In May 2020, the U.S. Department of Labor issued a directive permitting states, "[i]n response to the spread of COVID-19," to temporarily suspend the applicability of the "between and within" terms to non-professional staff. UIPL No. 10-20 (May 15, 2020) at 5-6.

53.   Thus, plaintiffs *may* be denied unemployment compensation during the summer months-between the end of an academic school year in June and the beginning of a new academic school year in September- if they had first received true "reasonable assurance" from their employer of performing their jobs in September; however, due to the effects of the Pandemic, it is not required that they be denied.

### C.  Determining Plaintiffs' Eligibility for Unemployment Insurance Benefits

54.   The United States Department of Labor is the entity that oversees each state's implementation of its unemployment insurance compensation program. *See generally* 42 U.S.C. § 501, et seq.; 20 C.F.R. § 601, et seq.

55.   In addition to administering applicable statutes and regulations, the United States Department of Labor provides policy guidance to states by issuing Unemployment Insurance Program Letters.

56.   United States Department of Labor Unemployment Insurance Program Letters (UIPL) are considered interpretative federal rules which explain or define particular terms in a statute or regulation for compliance by state agencies. Departmental directives setting forth interpretative rules are entitled to deference in judicial proceedings.

57.   On December 22, 2016, the U.S. Department of Labor issued Unemployment Insurance
      Program Letter (UIPL) No. 5-17, which provides the federal interpretation of the term
      "reasonable assurance" as used in 26 U.S.C. § 3304(a)(6)(A)(ii)(I).

58.   In UIPL No. 5-17, the Department set forth detailed requirements for determining school
      employees' unemployment eligibility involving "reasonable assurance" to "assist states in
      applying this interpretation "consistent with federal law requirements" and requiring all state
      unemployment agencies, including NYSDOL, to "review their laws and procedures and
      make any changes needed to conform with this interpretation."
      https://wdr.doleta.gov/directives/corr_doc.cfm?DOCN=8999

59.   In determining whether a school employee has received "reasonable assurance," and is
      therefore ineligible for unemployment benefits, NYSDOL must first analyze each offer of
      reasonable assurance for three prerequisites; failure to meet even one guarantees a
      claimant's eligibility. If the perquisites are met, NYSDOL then "must analyze the totality of
      circumstances to find whether it is *highly probable* that there is a job available for the
      claimants in the following academic year or term[.]" (emphasis supplied)
      https://wdr.doleta.gov/directives/corr_doc.cfm?DOCN=8999

60.   In the context of the Pandemic, when determining whether a school employee has received
      "reasonable assurance" and is therefore ineligible for unemployment benefits, NYSDOL
      "must make [this] determination *at the time of filing."* UIPL No. 10-20, Change 1 (May 15,
      2020), p. 6 (emphasis supplied).
      https://wdr.doleta.gov/directives/corr_doc.cfm?DOCN=8879

      **D.  Pandemic Unemployment Assistance (PUA)**

61.  As part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Congress created the Pandemic Unemployment Assistance ("PUA") program. 15 U.S.C. § 9021 et seq.

62.  PUA provides financial assistance to people not eligible or covered by traditional state unemployment insurance. PUA eligibility is restricted to a person who "is not eligible for regular compensation or extended benefits under State or Federal law…" 15 U.S.C. § 9021(a)(3)(A).

63.  Thus, defendants must first determine whether an individual is eligible for regular unemployment insurance benefits, and if not, then determine whether that same individual qualifies for PUA benefits, 15 U.S.C. § 9021(a) (3)(A)(i)(1).

64.  Defendants are required to review regular Unemployment Insurance claims that have been denied and identify individuals who are potentially eligible for PUA. UIPL 16-20, Change I, Attachment I, p. 2, Question 5.

65.  In addition to being ineligible for Unemployment Insurance benefits, individuals must apply and self-certify they are capable of working and that their lack of employment has a nexus with the Pandemic. Such a nexus may include, but is not limited to workplace closures or layoffs, or rescinded job offers. See 15 U.S.C. § 9021(a)(3)(A)(ii)(I).

66.  The New York State Department of Labor administers PUA and makes eligibility determinations. See 15 U.S.C. § 9021(f)(1).

67.  When administering PUA, defendants are required to follow 5 U.S.C. § 9021 and any additional instructions provided by the United States Department of Labor in Unemployment Insurance Program Letters (UIPL).

68. To facilitate the unemployment application process and the agency's eligibility determinations for these programs, defendants developed a common application which was completed by each of the plaintiffs in June 2020.

69. The cost of PUA is fully covered by the federal government. *See* 15 U.S.C. § 9021(f)(2).

**E. Pandemic Unemployment Compensation (PUC) and Lost Wages Assistance (LWA)**

70. Section 2123 of the CARES Act, 15 U.S.C.A. § 9023, established the Pandemic Unemployment Compensation program ("PUC"), a temporary federal program that provided additional benefits to plaintiffs until July 31, 2020.

71. There was no separate application process for PUC benefits; any claimant eligible for UI or PUA from the period of April 4 to July 25, 2020, automatically received an additional $600 per week in PUC benefits.

72. PUC benefits were designed to supplement a recipient's weekly receipt of regular unemployment benefits or PUA. *See* 15 U.S.C. § 9023(b)(1) and § 9023(e)(2).

73. The cost of PUC is fully covered by the federal government, 15 USCA § 9023(d).

74. After the PUC program ended in July 2020, the federal government instituted the Lost Wages Assistance ("LWA") program to supplement the weekly benefit amount received by all PUA and most UI claimants as authorized under the Stafford Act , 42 U.S.C. § 5174 (e)(2) and 44 C.F.R. § 206.119(c)(6)(ii)

75. As with plaintiffs' eligibility and receipt for of PUC benefits, there was no separate application process for receiving LWA benefits.

76. All PUA and UI claimants with a weekly benefit amount of at least $100 were eligible to receive an additional $300 per week for any week between approximately August 1, 2020 to September 15, 2020, during which they were eligible for UI or PUA benefits.

77.   Unless otherwise specified, plaintiffs' applications and receipt of unemployment insurance

benefits (UI benefits) or Pandemic Unemployment Assistance (PUA) and/or Pandemic

Unemployment Compensation (PUC) and/or Lost Wages Assistance (LWA) is generically

referred to herein as "unemployment benefits."

### IV. CLASS ACTION

78.   The named individual plaintiffs bring this suit as a class action on their own behalf and on

behalf of all other persons similarly situated.

79.   The class is defined as all non-professional school employees in New York State who

applied for unemployment benefits during the summer of 2020 and who were, or are, or who

will be denied benefits after defendants determine(d) that each plaintiff had received

"reasonable assurance" of fall educational employment without consideration of, or in

contravention to, required federal policy and eligibility standards for determining

"reasonable assurance."

80.   As explained in the following paragraphs, this action meets the requirements of Rule 23(a)

of the Federal Rules of Civil Procedure and is a proper class action under Rule 23(b)(2).

81.   Upon information and belief, the class as defined above comprises hundreds of persons.

Accordingly, the class members are so numerous that joinder is impractical.

82.   There exist questions of law and fact common to members of the plaintiff class. The

individually named plaintiffs applied for unemployment benefits during the summer of 2020

and received benefits. Defendants later determined that each plaintiff was ineligible for these

benefits based on defendants' conclusion that plaintiffs had received "reasonable assurance"

of fall educational employment.

83.    Defendants have unlawfully denied plaintiffs their federal statutory rights and their rights protected under the United States Constitution.

84.    Similar or identical harm has been inflicted upon all members of the plaintiff class. Thus, defendants' unlawful and unconstitutional policies and/or practices affects all proposed class members and establishes common questions of law and fact.

85.    The claims of the individually named plaintiffs are typical of the claims of the member class. Each individual plaintiff would have benefitted from procedural safeguards and the substantive and due process protections sought in this suit.

86.    Plaintiffs seek prospective injunctive relief on behalf of all class members.

87.    The individually named plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no interests which are antithetical to the interests of the class.

88.    Counsel for the plaintiffs have extensive experience in litigating class actions and public interest cases involving federal statutes and civil rights claims.

89.    Defendants are refusing to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the class as a whole. Fed. R. Civ. Procedure 23(b)(2).

## V. FACTS

90.    In mid-March 2020, all public schools in New York State were closed due to the COVID-19 public health emergency by order of Governor Cuomo, and except for remote learning, these schools remained closed throughout the summer.

91.    In prior years, each of the plaintiffs had worked during the summer months providing services related to summer school operations for their employer, in addition to their regular

employment activities performed during the academic year, between September and late
June.

92.    Plaintiffs' summer work is separate from their employment during the academic year.

93.    In May or June each year, their employer requested that the named plaintiffs who were
interested in extra work to affirmatively "sign up" for summer school employment.

94.    In June 2020, each plaintiff "signed up" for summer work with their employer.

95.    Plaintiffs subsequently learned from their employer that the schools would remain closed
during the summer months of 2020 as a direct result of the COVID-19 public health
emergency.

96.    As a result, plaintiffs were unable to perform their intended summer school jobs and lost all
their anticipated summer income to support themselves and their families during the
Pandemic.

97.    Plaintiffs experienced a substantial reduction in work hours and earnings as a result of the
COVID-19 public health emergency and their place of employment being closed.

98.    Because their summer jobs had been eliminated due to the COVID-19 public health
emergency, each named plaintiff applied for unemployment benefits from the New York
State Department of Labor online or by telephone in late June 2020.

99.    Upon receipt of their applications defendants made a Monetary Benefit Determination
("MBD") regarding each plaintiff's monetary eligibility for unemployment benefits by
determining if the claimant had sufficient earnings to qualify for benefits.

100.   The MBD only establishes monetary eligibility for UI benefits; but it does not necessarily
signify that the plaintiff has been approved for unemployment benefits.

101.  After receipt of most of these applications, defendants usually paid plaintiffs regular
      Unemployment Insurance (UI) benefits and, as a result, infrequently considered plaintiffs'
      eligibility for PUA based on a reduction in work hours and earnings as a result of the
      COVID-19 public health emergency and their place of employment being closed.

102.  After plaintiffs submitted their applications in late June 2020, defendants began to pay them
      unemployment benefits throughout the summer months, without any further hearings or
      notice to plaintiffs.

103.  In addition to weekly UI benefits, each plaintiff automatically received PUC and/or LWA
      benefits, with amounts totaling several thousand dollars by the end of the summer.

104.  In contravention of UIPL No. 01-16 (October 2015), defendants never informed plaintiffs
      that their eligibility for unemployment benefits had not been fully verified, or that "a
      pending eligibility issue may affect their entitlement and may result in an overpayment" of
      their unemployment benefits.

105.  Plaintiffs ceased claiming or receiving unemployment benefits when the schools reopened,
      and they were able to return to work for their educational employer in mid-September 2020.

106.  Weeks and sometimes months after plaintiffs stopped receiving benefits, the NYSDOL
      finally made an "initial determination" pursuant to N.Y. Labor Law § 597 and determined
      that plaintiffs were not eligible for unemployment benefits.

107.  Defendants' ineligibility determinations were based on plaintiffs' employer's protest of
      unemployment benefit payments and contravened the detailed eligibility procedures set forth
      in UIPL No. 5-17.

108. Defendants determined that plaintiffs were not eligible for unemployment benefits because they had each received a form letter of purported "reasonable assurance" for fall educational employment from their employer in early June 2020.

109. A true and accurate copy of the form letter sent to these particular plaintiffs and used by defendants in making their ineligibility determinations is attached hereto as Exhibit A.

110. Long after plaintiffs had returned to work and ceased receiving benefits, defendants sent each plaintiff a "Notice of Determination of Ineligibility" and a more detailed "Notice of Determination of Ineligibility or Disqualification."

111. In recognition of the extraordinary circumstances of the COVID-19 public health emergency and under the procedures set forth in UIPL No. 10-20, Change 1, defendants were required to decide plaintiffs' eligibility for unemployment benefits at the time of filing.

112. In their "Notice of Determination of Ineligibility or Disqualification" defendants have sought to recover thousands of dollars of unemployment benefits by both voluntary and involuntary means:

   a. Defendants have demanded repayment of $3,222 in unemployment, $2,400 in PUC, and $1,500 in LWA benefits plus and additional $483.30 in civil penalties, totaling $7,605 from Plaintiff James Inzinga;

   b. Defendants have demanded repayment of $3,433.75, in unemployment, $2,400 in PUC, and $1,800 in LWA benefits, plus an additional $515.06 in civil penalties, totaling $8,148.81 from Plaintiff Thelma Joy;

   c. Defendants have demanded repayment of $3,000 in unemployment, $1,800 of PUC, $1,800 of LWA, plus an additional $465 in civil penalties, totaling $7,065 from Plaintiff Susan Lake;

   d. Defendants have demanded repayment of $2,400 in PUC benefits and $1,800 in LWA benefits, totaling $4,200 from Plaintiff David Mason;

   e. Defendants have demanded repayment of $3,586 in unemployment, $2,400 in PUC, and $1,800 in LWA benefits, totaling $7,786 from Plaintiff Johnna Raimondi;

   f. Defendants have demanded repayment of $3,000 in PUC benefits and $1,800 in LWA benefits, totaling $4,800 from Plaintiff Theresa Scira;

113. Plaintiffs have long since spent all assistance they received from the defendants on food, clothing, shelter, and other necessities of life for themselves and their families.

114. In these Notices, defendants claimed plaintiffs are not eligible for benefits because they each had "reasonable assurance of performing services in a similar capacity at the same or another educational institution in the next academic year or term," and that plaintiffs' employer had informed them of this available work.

115. Plaintiffs each requested a fair hearing to challenge the Department of Labor's "initial determination" before an administrative law judge pursuant to N.Y. Labor Law § 620.

116. After their fair hearings, an administrative law judge determined that Plaintiffs James Inzinga, Johnna Raimondi, and Thelma Joy each were ineligible for their unemployment benefits because they had "reasonable assurance" of fall employment from their employer.

117. In contrast, in other similar or identical cases, nonprofessional employees of the Greece Central School District who challenged the NYSDOL determination of "reasonable assurance" at fair hearings were found eligible for unemployment benefits by the presiding NYSDOL administrative law judge.

118. Plaintiffs James Inzinga, Johnna Raimondi, and Thelma Joy have timely appealed these decisions to the New York State Unemployment Appeal Board, where a decision is pending.

119. Plaintiffs Susan Lake, David Mason, and Theresa Scira's requests for an administrative hearing are now awaiting a hearing date.

## VI. FIRST CAUSE OF ACTION
## VIOLATIONS OF TITLE THREE OF THE SOCIAL
## SECURITY ACT PURSUANT TO 42 U.S.C. §1983

120. Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504 and 20 C.F.R. § 640.3(a) require that state unemployment compensation programs provide for such

methods of administration as will reasonably insure the full payment of unemployment benefits to eligible claimants when due and with the greatest promptness that is administratively feasible.

121.    The New York State Department of Labor owes a duty to plaintiffs to act in a manner that comports with the Social Security Act, including the "when due" provision of 42 U.S.C. § 503(a)(1).

122.    Defendants failed to timely and properly apply or follow required federal directives set forth in Unemployment Insurance Program Letter No. 5-17 when evaluating plaintiffs' employer's erroneous assertions of benefit ineligibility.

123.    By failing to comply with required federal directives set forth in UIPL No. 5-17, and UIPL No. 10-20 Change 1, defendants breached their duty to plaintiffs to timely and properly review plaintiffs' employer's June 2020 "reasonable assurance" letter or acknowledge its facial deficiencies when evaluating plaintiffs' eligibility for unemployment benefits.

124.    In contravention of these federal statutory and regulatory requirements, several months after payment, defendants failed to provide plaintiffs with adequate notice or an opportunity to present their position before unilaterally redetermining plaintiffs' ineligibility for unemployment benefits.

125.    By failing to timely and properly apply the federal standards set forth in UIPL No. 5-17 when determining plaintiffs' entitlement to unemployment benefits and by failing to provide plaintiffs with adequate notice or an opportunity to present their position before unilaterally redetermining plaintiffs' ineligibility for these same benefits, defendants have failed to ensure the full payment of unemployment benefits when due and with the greatest promptness that is administratively feasible.

126.   As a result of defendants' failure to insure plaintiffs' unemployment benefits when due and

with the greatest promptness that is administratively feasible, defendants violated 42 U.S.C.

§§ 501-504 and 20 C.F.R. § 640.3(a), thus creating a privately enforceable cause of action

pursuant to 42 U.S.C. § 1983.

127.   Defendants' violations of the Social Security Act and regulations have caused plaintiffs

injury, including irreparable injury, which will continue unless defendants are enjoined from

their unlawful conduct.

## VII. SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FOURTEENTH AMENDMENT,
## SUBSTANTIVE DUE PROCESS PURSUANT TO 42 U.S.C. §1983

128.   During the summer of 2020, plaintiffs each applied for and received UI or PUA benefits, as

well as supplementary PUC and LWA benefits from the New York State Department of

Labor to support themselves and their families during the Pandemic.

129.   Defendants now claim that all the plaintiffs were ineligible to receive these unemployment

benefits during the summer of 2020, and they seek repayment from them through both

voluntary and involuntary means.

130.   By letter notice to each plaintiff, defendants have recently sought to recover thousands of

dollars of unemployment benefits which plaintiffs have long since spent on food, clothing,

shelter, and other necessities of life.

131.   It is well established that plaintiffs' receipt of unemployment benefits is a property interest

subject to the protections and due process requirements of the Fourteenth Amendment.

132.   In making their eligibility determinations and demands for repayment, defendants have

arbitrarily and selectively ignored compliance with several federal eligibility and entitlement

directives set forth in federal Unemployment Insurance Program Letter No. 5-17 (December

22, 2016) and Unemployment Insurance Program Letter No. 10-20 Change 1 (May 15, 2020) including:

    a. Compliance with federally required analysis of plaintiffs' offers of "reasonable assurance" to determine whether three basic employment preconditions have been met; and if not, making an immediate finding of claimant eligibility; and

    b. Compliance with the federally required decision-making flow chart used for determining plaintiffs' entitlement to unemployment insurance benefits when evaluating claims of "reasonable assurance" from an employer; and

    c. After determining all preconditions have been satisfied, a specific finding by defendants that under the "totality of circumstances…it is highly probable that there is a job available for the claimant in the following academic year or term" and

    d. Making a determination of whether reasonable assurance exists at the time plaintiffs filed their application for benefits.

133.    Defendants' failure to comply with these federal requirements resulted in a fundamentally flawed decision-making process that produced repayment demands for thousands of dollars from hundreds of individual plaintiffs.

134.    Defendants' decision-making process is intrinsically defective such that individual repayment demands unsupported by substantial evidence have predictably occurred and will continue to reoccur.

135.    Defendants' intrinsically defective decision-making process and concomitant repayment demands upon plaintiffs has resulted in inconsistent decisions by administrative law judges, such that, under the same factual circumstances, some claimants are found eligible for benefits while others are found ineligible for these same benefits.

136.    Defendants' intrinsically defective decision-making process and concomitant repayment demands upon plaintiffs constitutes an arbitrary and gross abuse of governmental authority.

137.   Defendants' intrinsically defective decision-making process and concomitant repayment demands to plaintiffs constitutes a violation of plaintiffs' rights to substantive due process protected by Fourteenth Amendment.

## VIII. THIRD CAUSE OF ACTION
## VIOLATIONS OF THE FOURTEENTH AMENDMENT, PROCEDURAL DUE PROCESS PURSUANT TO 42 U.S.C. §1983

138.   Plaintiffs each applied for and received unemployment benefits from defendants during the summer of 2020.

139.   Plaintiffs' receipt of unemployment benefits is a property interest protected by the due process requirements of the Fourteenth Amendment.

140.   After plaintiffs had returned to work and ceased receiving benefits, defendants mailed each plaintiff a "Notice of Determination of Ineligibility" and a more detailed "Notice of Determination of Ineligibility or Disqualification" in the fall of 2020.

141.   In these Notices, defendants claimed that each plaintiff "has reasonable assurance of performing services in a similar capacity at the same or another educational institution in the next academic year or term," and that plaintiffs' employer had informed them of this available work.

142.   As a matter of due process, an unemployment recipient must be given timely and adequate notice detailing the reasons for defendants' overpayment determination and the recovery of unemployment benefits.

143.   Defendants' notices are incomprehensible to all but the most experienced unemployment experts. The mere giving of a conclusory notice of unemployment overpayments is not enough to comply with due process procedural requirements.

144.  To be constitutionally adequate, defendants' ineligibility determination notices must provide plaintiffs with enough information to understand the reasons for the agency's action.

145.  Defendants' Notice of Determination of Ineligibility or Disqualification fails to detail the reasons for unemployment ineligibility permitting a recipient to determine whether the Notice rests on incorrect or misleading factual premises, or on misapplication of applicable rules or policies.

146.  For instance, defendant's notice scheme fails to provide any facts or details relied upon by defendants in concluding that in June 2020 under the "totality of the circumstances" provision, plaintiffs had received reasonable assurance of their fall educational employment.

147.  In this respect, defendant's notice scheme fails explain or provide any factual basis for concluding at the time of filing in June 2020 that plaintiffs had received "reasonable assurance" of fall educational employment when all the schools in New York State were closed due to the COVID-19 public health emergency, with unknown reopening dates or conditions.

148.  Defendants' Notice of Determination of Ineligibility or Disqualification sometimes demand repayment of all unemployment benefits received but provide no details regarding defendants' methods for calculating such overpayments or any information concerning the dates when these overpayments were purportedly made by defendants or received by plaintiffs.

149.  Without explanation, defendants' Notice of Determination of Ineligibility or Disqualification periodically demand some plaintiffs repay only PUC or LWA benefits.

150. There was no separate application process for PUC and LWA benefits, and plaintiffs' receipt of these benefits was entirely dependent upon their eligibility and receipt of either Unemployment Insurance or PUA benefits.

151. As part of Defendants' Notice of Determination of Ineligibility or Disqualification, constitutional due process requires defendants to explain the method by which plaintiffs' benefit overpayment amounts were calculated, and the underlying facts upon which those calculations were based.

152. Constitutional due process further requires defendants' notice scheme to provide reasons in sufficient detail so that a recipient can prepare a responsive defense.

153. Overpayments of Unemployment Insurance, Labor Law § 597(4); Pandemic Unemployment Assistance, 15 U.S C. § 9021(d)(4); and/or Pandemic Unemployment Compensation, 15 U.S.C. § 9023(f)(2); and/or Lost Wages Assistance, Consolidated Appropriations Act, Sec. 262 PL 116-260, December 27, 2020, 134 Stat 1182 received by recipients without fault may be waived by defendants "when repayment would be contrary to equity and good conscience."

154. As a matter of constitutional due process, defendants' notices scheme fails to disclose these state and federal waiver provisions permitting plaintiffs to prepare responsive defenses.

155. Although defendant's notice scheme invites recipients to request a fair hearing, defendants improperly place the burden on the recipient to ascertain the facts or applicable rules or policies for receiving unemployment benefits when due process directs defendants to supply these critical details.

156. Defendants' failure to comply with these procedural due process requirements forces recipients to find information and assistance about defendants' actions, leaving those without such resources or skills with enormous repayment obligations.

157. Defendants' flawed notice scheme constitutes a violation of plaintiffs' rights to procedural due process protected by Fourteenth Amendment creating a privately enforceable cause of action pursuant to 42 U.S.C. § 1983.

158. Plaintiffs have no adequate remedy at law to redress the wrongs set forth in this Complaint.

159. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the Defendants' acts and omissions as alleged herein, unless this Court grants the relief requested.

**WHEREFORE,** plaintiffs respectfully request this honorable court:

a. Assume jurisdiction of this case; and

b. Determine that the named individual plaintiffs are representative of the class as defined herein and certify this matter as a class action; and

c. Declare that the defendants violated each plaintiff's rights under Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504 as described in Plaintiffs' First Cause of Action, and enjoin defendants from all future violations; and

d. Declare that the defendants violated each plaintiff's Fourteenth Amendment substantive due process rights as described in Plaintiffs' Second Cause of Action, and enjoin defendants from all future violations; and

e. Declare that the defendants violated each plaintiff's procedural due process rights as described in Plaintiffs' Third Cause of Action and enjoin defendants from all future violations; and

g.  Retain jurisdiction of this matter until such time as defendants have fully complied

    with the provisions of the laws and civil rights laws of the United States and United

    States Constitution, and for three years thereafter to ensure continued compliance

    with the law; and

h.  Award plaintiffs their attorneys' fees and costs under 42 U.S.C. §1988; and

i.  Grant plaintiffs any and all other relief this court may deem proper.


                           Respectfully Submitted,

                           Empire Justice Center
                           1 West Main Street, Suite 200
                           Rochester, NY 14614
                           Telephone: (585) 454-4060

                    By:    /s/ Peter O'Brian Dellinger
                           Peter O'Brian Dellinger
                           pdellinger@empirejustice.org

                    By:    /s/ Maggie R. Robb
                           Maggie R. Robb
                           mrobb@empirejustice.org

                           COVID Law & Community Engagement Clinic
                           University at Buffalo School of Law
                           507 O'Brian Hall, North Campus
                           Buffalo, New York 14260
                           (p): (716) 645-2167
                           (f): (716) 645-6199
                           law-covid@buffalo.edu

                    By:    /s/ Vanessa Glushefski
                           Vanessa Glushefski

                           Counsel for Plaintiffs


Dated:    April 23, 2021

EXHIBIT A

08-24-'20 11:03 FROM-  Greece CSD          585-581-8198          T-457  P0002/0002 F-612



**GREECE CENTRAL SCHOOL DISTRICT**
Department of Human Resources
Address • 750 Maiden Lane, Rochester, NY 14615-1296
Mailing Address • P.O. Box 300, N. Greece, NY 14515-0300
Telephone • 585.966.2300 Fax • 585.581.8214
Web Address • www.greececsd.org



Jeremy Smalline                                    Kathleen Graupman
*Assistant Superintendent for Human Resources*              *Superintendent of Schools*

To: ████████████                    Position: Bus Attendant

Please be advised that the Greece Central School District with this letter is providing you with reasonable assurance that you will perform services for Greece Central School District in the capacity of Bus Attendant _____ for the school year 2020-2021, beginning on July 1, 2020 and ending on June 30, 2021.

This reasonable assurance will also continue for periods of employment immediately before and after any vacation and/or holiday term, or any state-mandated closures during the school year 2020-2021. The school calendar can be found on our website at http://www.greececsd.org under "Our District", "Publications & Calendars".

Therefore, and as noted above, you are presumed to have a reasonable assurance that you will perform services with the Greece Central School District and to resume work at the beginning of the ensuing year or term and immediately following vacation periods and/or holiday recesses, or any state-mandated closures unless otherwise noted.

This reasonable assurance is being transmitted to you for the sole and express purpose of complying with the revisions of the Federal Unemployment Act enacted under Public Law 94-566 and commonly referred to as the Unemployment Insurance Amendments of 1976. These amendments require each state to provide unemployment insurance coverage to local government employees which by companion legislation was enacted in 1977 by New York State.

Provided your services are satisfactory and unless you are notified otherwise, you are assured employment and are expected to report to work

I have read the above and understand its contents and:

Selection: Yes, I will be reporting for the 2020/2021 school year

*If not returning, my last day of employment will be* _____

If we do not hear from you by June 30th, 2020, we will take your lack of response as your interest to separate from the district and we will take the necessary action to remove you from our list of active employees. It is the employee's responsibility to respond to this letter by the deadline date; no further communication will be made by the district to solicit a response.

Signature: ~~████████~~ _____          Date: 06/01/2020 _____

14