**Exhibit B**

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NEW YORK

_____

|  |  |
|---|---|
| JAMES INZINGA, THELMA JOY, MICHAEL KELLY, SR., SUSAN LAKE, DAVID MASON,  THERESA SCIRA, LINDA THOMPSON, and BARBARA  DOVIDIO, on behalf of themselves and all Others similarly situated,<br><br>         Plaintiffs,<br><br>  v.<br><br>KATHLEEN COURTNEY HOCHUL, Governor of the State of New York, and<br><br>ROBERTA REARDON, as Commissioner of the New York State Department of Labor,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 6:21-cv-06344 (CJS)(MWP) |

_____

**AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF**

**PRELIMINARY STATEMENT**

1.     Plaintiffs bring this action on behalf of themselves and all non-professional summer

school workers across New York State who lost their jobs due to the COVID-19

pandemic and public health emergency (herein referred to as "Pandemic") and were

improperly denied unemployment benefits by Defendants.

2.     In late June 2020, Plaintiffs James Inzinga, Thelma Joy, Susan Lake, David Mason,

Theresa Scira, Michael Kelly, Sr., Linda Thompson, and Barbara Dovidio lost their

summer school employment due to school closures mandated by the Pandemic. At the

suggestion of their union, they each applied for and received needed unemployment benefits until they returned to work when schools reopened in September 2020.

3.  Weeks and months after Plaintiffs had returned to work, Defendants mailed each Plaintiff a "Notice of Determination of Ineligibility," which, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, failed to provide Plaintiffs with sufficient information to understand the reasons for Defendants' action.

4.  Defendants' ineligibility determinations contravened federal law and policy and denied Plaintiffs their unemployment benefits in violation of Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501(a)(1) and 501(a)(3), the Federal Unemployment Tax Act (FUTA), 26 U.S.C. § 3304(a)(6)(A)(ii)(I), and the Fourteenth Amendment to the United States Constitution.

5.  Plaintiffs seek an Order declaring Defendants' policies and practices unlawful and enjoining Defendants from failing to comply with federal statutes and directives when determining Plaintiffs' eligibility for unemployment benefits pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Title III of the Social Security Act, 42 U.S.C. § 503(a)(1) and 501(a)(3), Federal Unemployment Tax Act (FUTA), 26 U.S.C. § 3304(a)(6)(A)(ii)(I), and 42 U.S.C. § 1983.

## I.  JURISDICTION AND VENUE

6.  This Court has jurisdiction over all claims against Defendants in this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) and (4).

7.  Plaintiffs' requests for injunctive and declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202.

8.  Plaintiffs seek attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b). All or a substantial part of the

acts giving rise to Plaintiffs' claims occurred and continue to occur in the Western

District of New York.

## II.  PLAINTIFFS AND DEFENDANTS

### A.  Plaintiffs

**Plaintiff James Inzinga**

10.    Plaintiff James Inzinga is 81 years old and resides in Greece, New York.

11.    Plaintiff Inzinga receives Social Security and retirement benefits which are insufficient to

support himself and his wife, and to make ends meet he has worked as a bus driver for

the Greece Central School District ("GCSD") for the last seven years.

12.    Plaintiff Inzinga worked during previous summers driving children to and from their

summer school programming and planned to continue this work in the summer of 2020.

13.    In June 2020, Plaintiff Inzinga learned that the GCSD schools would be physically closed

during the summer of 2020, and that there was no work for him.

14.    On June 29, 2020, without work, and with the encouragement of his union, Plaintiff

Inzinga applied for unemployment insurance benefits.

15.    On June 30, 2020, the next day, the New York State Department of Labor ("NYSDOL")

sent a Notice of Protest form to Plaintiff Inzinga's employer, GCSD.

16.    On July 8, 2020, Plaintiff Inzinga began receiving unemployment benefits, which he

continued to receive over the summer months.

17.    On July 17, 2020, GCSD faxed a completed and signed Notice of Protest to the

NYSDOL claiming that Plaintiff Inzinga should not receive unemployment benefits

because he was given an offer of reasonable assurance for the next term or semester.

18.    On September 3, 2020, GCSD requested a hearing with the Unemployment Insurance Division because "benefits were paid to the claimant without the DOL issuing a notice of determination. Protested 7/17/20."

19.    On October 20, 2020, almost four months after he applied for and received unemployment benefits, the NYSDOL sent Plaintiff Inzinga his first notice, a Notice of Determination of Ineligibility.

20.    On October 22, 2020, the NYSDOL sent Plaintiff Inzinga a Monetary Benefit Determination.

21.    On January 1, 2021, Plaintiff Inzinga was found ineligible for these unemployment benefits by a New York State administrative law judge ("ALJ"). The ALJ reasoned that Plaintiff Inzinga had a "contract which provides the requisite reasonable assurance of continued employment."

22.    Additionally, the ALJ determined that Plaintiff Inzinga's receipt of a letter from GCSD in June 2020 provided him with reasonable assurance of fall employment "even with the ongoing COVID-19 pandemic."

23.    A true and accurate copy of the form letter received by Plaintiff Inzinga is attached hereto as Exhibit A to this complaint.

24.    Plaintiff Inzinga timely appealed this decision to the New York Unemployment Appeal Board.

25.    Plaintiff Inzinga's appeal was pending at the time this lawsuit was originally filed in April 2021, and when Plaintiffs' Motion for Class Certification was filed on May 10, 2021.

26.    On June 9, 2021, Defendants' Unemployment Appeal Board denied Plaintiff Inzinga's appeal and affirmed the ALJ's determination of ineligibility.

**Plaintiff Thelma Joy**

27.    Plaintiff Thelma Joy is 72 years old and resides in Rochester, New York.

28.    Plaintiff Joy has worked for the Greece Central School District for 27 years, first as a bus attendant, and now as a bus driver.

29.    Plaintiff Joy also intended to work as a bus driver during the summer months transporting children to and from summer school, but her job was eliminated due to the Pandemic and school closures in 2020.

30.    On June 29, 2020, without work, and with the encouragement of her union, Plaintiff Joy applied for and received unemployment benefits over the summer months.

31.    On June 30, 2020, the next day, the NYSDOL sent a Notice of Protest form to Plaintiff Joy's employer, GCSD.

32.    On July 1, 2020, Plaintiff Joy began receiving unemployment benefits, which she continued to receive over the summer months.

33.    On July 17, 2020, GCSD faxed a completed and signed Notice of Protest to the NYSDOL claiming that Plaintiff Joy should not receive Unemployment Insurance (UI) benefits because she was given an offer of reasonable assurance for the next term or semester.

34.    On September 28, 2020, GCSD requested a hearing with the Unemployment Insurance Division because "benefits were paid to the claimant without the DOL issuing a notice of determination."

35.    On October 30, 2020, four months after she applied for and received UI benefits, the NYSDOL issued its first notice to Plaintiff Joy, a Notice of Determination of Ineligibility.

36.     Plaintiff Joy challenged Defendants' ineligibility determination at an administrative

        hearing, but on February 9, 2021, Plaintiff Joy was found ineligible for these

        unemployment benefits by a New York State ALJ.

37.     The ALJ reasoned that Plaintiff Joy was not eligible for benefits because she had

        reasonable assurance of fall employment arising from a union contract between her union

        and her employer.

38.     The ALJ further reasoned that Plaintiff Joy was not eligible for unemployment benefits

        because she had received a letter of reasonable assurance of fall employment from GCSD

        in June 2020.

39.     A true and accurate copy of the GCSD form letter received by Plaintiff Joy is attached

        hereto as Exhibit A to this complaint.

40.     Plaintiff Joy timely appealed this decision to the New York Unemployment Appeal

        Board.

41.     A decision from the Defendants' Unemployment Appeal Board was pending at the time

        this lawsuit was originally filed in April 2021, and when Plaintiffs' Motion for Class

        Certification was filed on May 10, 2021.

42.     On July 9, 2021, the Appeal Board affirmed the ALJ's decision denying Plaintiff Thelma

        Joy her unemployment benefits.

        **Plaintiff Susan Lake**

43.     Plaintiff Susan Lake is 52 years old and lives in Greece, New York.

44.     Plaintiff Lake supports herself and her parents by working for the Greece Central School

        District for the past 25 years, first as a bus driver and now as a bus attendant.

45.     As in the previous summers, Plaintiff Lake planned to work as a bus attendant during the

        Greece Central School District summer session, but her job was eliminated due to the

        Pandemic.

46.     On July 8, 2020, needing income to support herself and her parents, and at the

        encouragement of her union, Plaintiff Lake applied for unemployment benefits.

47.     On July 9, 2020, the NYSDOL sent Plaintiff Lake's employer, GCSD, a Notice of Protest

        form.

48.     On July 12, 2020, Plaintiff Lake received her first unemployment benefit payment and

        continued to receive unemployment benefits during the summer months.

49.     On July 20, 2020, GCSD faxed a completed and signed Notice of Protest to the

        NYSDOL claiming that Plaintiff Lake should not receive unemployment benefits because

        she was given an offer of reasonable assurance for the next term or semester.

50.     On September 28, 2020, GCSD requested a hearing with the Unemployment Insurance

        Division because "benefits were paid to the claimant without the DOL issuing a notice of

        determination."

51.     On February 3, 2021, the NYSDOL sent Plaintiff Lake a Notice of Determination of

        Ineligibility.

52.     On March 2, 2021, Plaintiff Lake failed to attend her unemployment hearing due to lack

        of counsel. Counsel subsequently appeared for Plaintiff Lake and the ALJ granted

        counsel's request to reopen Plaintiff Lake's case.

53.     Plaintiff Lake received the same letter of reasonable assurance of fall employment from

        GCSD in June 2020 as the other Plaintiffs, and a true and accurate copy of this form letter

        is attached hereto as Exhibit A.

54.    On July 15, 2021, an ALJ reversed Defendants' Notice of Ineligibility and determined

that Plaintiff Lake was eligible for the 2020 summer unemployment benefits she had

received.

55.    In rejecting Defendants' ineligibility determination based on the June 2020 GCSD letter

of reasonable assurance, the ALJ stated "[t]he mere receipt of a letter of reasonable

assurance does not establish that the claimant had a reasonable assurance of performing

work for the employer in the next academic year or term."

56.    The ALJ further held that the contract between Plaintiff Lake's union and her employer

also did not provide reasonable assurance in light of pandemic-related circumstances.

57.    The contract between Plaintiff Lake's union and her employer is the same contract that

was determined to provide Plaintiff Inzinga and Plaintiff Joy with "reasonable assurance"

in their administrative hearing decisions and appeals.

**Plaintiff David Mason**

58.    Plaintiff David Mason is 72 years old and lives in North Greece, New York.

59.    For the last 23 years, Plaintiff Mason has supported himself by working for the Greece

Central School District as a school bus driver.

60.    Plaintiff Mason planned to work as a bus driver transporting children during the Greece

Central School District 2020 summer session, but his job was eliminated by the

Pandemic.

61.    On June 25, 2020, needing income and with the encouragement of his union, Plaintiff

Mason applied for and received unemployment benefits over the summer months.

62.    On July 6, 2020, Plaintiff Mason received his first unemployment benefit payment and

continued to receive unemployment benefits over the summer months.

63. On July 7, 2020, GCSD faxed a completed and signed Notice of Protest to the NYSDOL claiming that Plaintiff Mason should not receive unemployment benefits because he was given an offer of reasonable assurance for the next term or semester.

64. On September 3, 2020, GCSD requested a hearing with the Unemployment Insurance Division because "benefits were paid to the claimant without the DOL issuing a notice of determination."

65. On February 10, 2021, seven months after he applied for and then received unemployment benefits, the NYSDOL sent Plaintiff Mason his first Notice, a Notice of Determination of Ineligibility.

66. Plaintiff Mason contested this decision and timely requested a hearing before an ALJ.

67. Plaintiff Mason's hearing request was pending at the time this action was filed in April 2021 and at the time Plaintiffs' Motion to Certify the Class was filed on May 10, 2021.

68. On May 17, 2021, an ALJ determined that Plaintiff Mason was in fact eligible for the unemployment benefits he had received during the summer of 2020. According to the ALJ, GCSD could not reasonably assure Plaintiff Mason that it could provide him with "substantially the same opportunity to earn at least ninety percent" of his prior year earnings in the fall of 2020.

**Plaintiff Theresa Scira**

69. Plaintiff Theresa Scira is 76 years old and lives with her disabled husband in Greece, New York.

70. Plaintiff Scira has been employed as a bus attendant for the Greece Central School District for 10 years, assisting in transporting special needs children between their homes and schools.

71.     In the spring months of 2020, Plaintiff Scira planned to work during the summer school session to supplement her household income, and in June 2020, she learned that there would be no summer work for her.

72.     On June 26, 2020, at the suggestion of her union, Plaintiff Scira applied for unemployment benefits.

73.     On June 29, 2020, the NYSDOL sent a Notice of Protest form to Plaintiff Scira's employer, GCSD.

74.     On July 1, 2020, Plaintiff Scira received her first unemployment benefit payment and continued to receive them throughout the summer.

75.     On July 22, 2020, GCSD faxed a completed and signed Notice of Protest to the NYSDOL claiming that Plaintiff Scira should not receive unemployment benefits because she was given an offer of reasonable assurance for the next term or semester.

76.     On September 8, 2020, GCSD requested a hearing with the Unemployment Insurance Division because "benefits were paid to the claimant without the DOL issuing a notice of determination."

77.     On January 27, 2021, almost seven months after she first applied for and received UI benefits, the NYSDOL sent Plaintiff Scira her first notice, a Notice of Determination of Ineligibility.

78.     Plaintiff Scira timely requested a hearing before an ALJ to contest Defendants' ineligibility determination.

79.     Plaintiff Scira's hearing request was pending at the time this action was originally filed in April 2021 and when Plaintiffs' Motion for Class Certification was filed on May 10, 2021.

80.     On May 21, 2021, an ALJ determined Plaintiff Scira was eligible for her summer 2020

        unemployment benefits because "[t]he COVID Pandemic created many uncertainties in

        regard to the Fall 2020 school semester and this created a reality where the Greece

        Central School District did not provide [her with] reasonable assurance".

        **Plaintiff Michael Kelly, Sr.**

81.     Plaintiff Michael Kelly, Sr., is 74 years old and resides in Greece, New York.

82.     Plaintiff Kelly worked as a bus driver for the Greece Central School District for nearly

        twenty years.

83.     Plaintiff Kelly worked during previous summers driving children to and from their summer

        school programming and planned to continue this work in the summer of 2020.

84.     In June 2020, Plaintiff Kelly learned that the Greece Central School District schools would

        be physically closed during the summer of 2020, and that there was no work for him.

85.     On June 26, 2020, without work, and with the encouragement of his union, Plaintiff Kelly

        applied for and received unemployment benefits over the summer months.

86.     On June 29, 2020, NYSDOL sent a Notice of Protest form to Plaintiff Kelly's employer,

        GCSD.

87.     On July 5, 2020, Plaintiff Kelly began receiving unemployment benefits, and continued to

        receive payments over the summer months.

88.     On July 17, 2020, GCSD faxed a completed and signed Notice of Protest to the

        NYSDOL claiming that Plaintiff Kelly should not receive unemployment benefits

        because he was given an offer of reasonable assurance for the next term or semester.

89.     On September 8, 2020, GCSD requested a hearing with the Unemployment Insurance Division because "benefits were paid to the claimant without the DOL issuing a notice of determination."

90.     On December 17, 2020, almost six months after he applied for and then received unemployment benefits, NYSDOL sent Plaintiff Kelly his first notice, a Notice of Determination of Ineligibility.

91.     Plaintiff Kelly was recovering from major surgery to treat throat cancer in December 2020.

92.     On February 16, 2021, once well enough to do so, Plaintiff Kelly mailed a letter to NYSDOL requesting a hearing.

93.     On April 30, 2021, Plaintiff Kelly was found ineligible for these unemployment benefits by a New York State ALJ, who sustained NYSDOL's objection that Plaintiff Kelly's hearing request was untimely.

94.     The ALJ was unconvinced by Plaintiff Kelly's evidence that illness from throat cancer prevented him from requesting a hearing within 30 days. No mention was made of GCSD's request for a hearing in September 2020, two months prior to NYSDOL issuing its first notice, a Notice of Ineligibility.

95.     On September 9, 2021, the Unemployment Insurance Appeal Decision of the Board affirmed the earlier denial of benefits.

96.     On November 10, 2021, NYSDOL sent Plaintiff Kelly a collection notice for the unemployment insurance benefits he received in the amount of $4,800.00. The notice provided that in the absence of repayment Plaintiff Kelly's tax refund could be collected and a judgment may be issued against him which will enable the NYSDOL to garnish his wages and bank account.

97.     On December 1, 2021, NYSDOL sent Plaintiff Kelly a second collection notice.

**Plaintiff Linda Thompson**

98.  Plaintiff Linda Thompson is 57 years old and resides in Greece, N.Y.

99.  Plaintiff Thompson has worked for the Greece Central School District for 13 years as a bus driver.

100. Plaintiff Thompson worked as a bus driver every summer since she started with the Greece Central School District, except in 2020.

101. Plaintiff Thompson intended to work as a Greece Central School District bus driver during the summer months transporting children to and from summer school, but her job was eliminated due to the Pandemic and related school closures in 2020.

102. Without work, and with the encouragement of her union, Plaintiff Thompson applied for and received unemployment benefits over the summer months.

103. On June 29, 2020, Plaintiff Thompson received a Monetary Benefit Determination letter from NYSDOL.

104. On August 10, 2020, Plaintiff Thompson received a second Monetary Benefit Determination letter from NYSDOL, finding the same weekly benefit rate as the June 29, 2020, Determination, and an effective date one week earlier than the June 29, 2020, Determination.

105. On October 30, 2020, Plaintiff Thompson received a NYSDOL Monetary Benefit Determination Revised Notice stating a weekly benefit rate of $0.

106. In the late fall of 2020, Plaintiff Thompson received a letter from NYSDOL stating that she was overpaid benefits in the amount of $2,700.

**Plaintiff Barbara Dovidio**

107. Plaintiff Barbara Dovidio is 74 years old and lives in Greece, New York.

108.   Plaintiff Dovidio supports herself by working for the Greece Central School District as a school bus attendant, as she has for the past sixteen years.

109.   As in previous summers, Plaintiff Dovidio planned to work as a school bus attendant during the Greece Central School District summer 2020 session, but her job was eliminated due to the Pandemic and resulting school closures.

110.   Needing income to support herself, and at the encouragement of her union, Plaintiff Dovidio applied for unemployment benefits via phone on July 7, 2020.

111.   Plaintiff Dovidio began receiving unemployment benefits and continued to receive them throughout the summer months.

112.   On January 28, 2021, the NYSDOL sent Plaintiff Dovidio a Notice of Determination of Ineligibility or Disqualification stating Plaintiff Dovidio's earnings could not be used for unemployment benefit entitlement purposes under New York Law, though the statutory section was misstated as § 591.11 (a non-existent statute).

113.   On April 30, 2021, Plaintiff Dovidio was found ineligible for these unemployment benefits by a New York State ALJ.

114.   The ALJ reasoned that Plaintiff Dovidio "is a member of a union that has a collective bargaining agreement with the district. Her union membership is sufficient to establish reasonable assurance."

115.   On October 25, 2021, Defendants' Unemployment Appeal Board denied Plaintiff Dovidio's appeal and summarily affirmed the ALJ's determination of ineligibility.

116.   On January 13, 2022, NYSDOL sent Plaintiff Dovidio a collection notice demanding payment and accompanied by threats of wage garnishment and use of her tax refund.

**B. Defendants**

117.   Defendant Governor Kathleen Courtney Hochul is the 57th Governor of the State of New York.

118.   Article IV § 3 of the New York Constitution states in pertinent part that the governor "shall take care that the laws are faithfully executed."

119.   The governor is responsible for "faithfully executing" Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504 and 20 C.F.R. § 640.3(a) and, therefore, Governor Kathleen Courtney Hochul is a proper defendant.

120.   Defendant Roberta Reardon is the Commissioner of Labor for the State of New York.

121.   New York Labor Law Art. 18, Tit. 3, Sec. 530 articulates the powers and duties of Defendant Roberta Reardon.

122.   Pursuant to § 530(2), as commissioner, Roberta Reardon is designated as the agent of the state for the purpose of the state's adoption of the Wagner-Peyser Act, the 1933 congressional act that established the national employment service that serves as the umbrella for the unemployment insurance program. Therefore, Commissioner of Labor Roberta Reardon is a proper defendant.

### III.   CLASS ACTION

123.   The named individual Plaintiffs bring this suit as a class action on their own behalf and on behalf of all other persons similarly situated.

124.   The class is defined as all non-professional school employees in New York State who applied for unemployment benefits during the summer of 2020 and who were, or are, or who will be denied benefits after Defendants determine(d) that each Plaintiff had received "reasonable assurance" of fall educational employment without consideration of,

or in contravention to, required federal policy and eligibility standards for determining "reasonable assurance."

125.    As explained in the following paragraphs, this action meets the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and is a proper class action under Rule 23(b)(2).

126.    Upon information and belief, the class as defined above comprises hundreds of persons. Accordingly, the class members are so numerous that joinder is impractical.

127.    There exist questions of law and fact common to members of the plaintiff class. The individually named Plaintiffs applied for unemployment benefits during the summer of 2020 and received benefits. Defendants later determined that each Plaintiff was ineligible for these benefits based on Defendants' conclusion that Plaintiffs had received "reasonable assurance" of fall educational employment.

128.    Defendants have unlawfully denied Plaintiffs their federal statutory rights and their rights protected under the United States Constitution.

129.    Similar or identical harm has been inflicted upon all members of the plaintiff class. Thus, Defendants' unlawful and unconstitutional policies and/or practices affects all proposed class members and establishes common questions of law and fact.

130.    The claims of the individually named Plaintiffs are typical of the claims of the member class. Each individual Plaintiff would have benefitted from the procedural due process protections sought in this suit.

131.    Plaintiffs seek prospective injunctive relief on behalf of all class members.

132.    The individually named Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no interests which are antithetical to the interests of the class.

133.   Counsel for the Plaintiffs have extensive experience in litigating class actions and public interest cases involving federal statutes and civil rights claims.

134.   Defendants are refusing to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the class as a whole. Fed.R.Civ.P. 23(b)(2).

## IV.  STATUTORY AND REGULATORY ELIGIBILTY FRAMEWORK

### A.  Title III of the Social Security Act of 1935

135.   Congress established the federal-state cooperative, state-administered unemployment insurance program to provide a substitute for wages lost during a period of unemployment to workers who lost their employment through no fault of their own. H.R. Rep. No. 615, 74th Cong., 1st Sess., 7 (1935).

136.   The purpose of unemployment insurance benefits is to provide prompt replacement of wages to stabilize the economic purchasing power of workers until they find employment so they will not have to resort to public welfare programs. H.R. Rep. No. 615, 74th Cong., 1st Sess., 7 (1935).

137.   Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504, provides payments to the states to finance the administration of these unemployment insurance programs.

138.   It requires, as a condition of payment, that states administer their unemployment compensation programs "to be reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1). This is known as the "when due" provision.

139.   The "when due" provision requires states to "provide for such methods of administration as will reasonably ensure the full payment of unemployment benefits to eligible claimants

when due and with the greatest promptness that is administratively feasible." 20 C.F.R.
§ 640.3(a).

140. The "State agency is required to obtain ***promptly and prior to a determination of an***
***individual's right to benefits***, such facts pertaining thereto as will be sufficient
reasonably to insure the payment of benefits when due." Employment Security Manual,
Standard for Claim Determinations (Part V, Section 6013). 20 C.F.R. § Pt. 602, App. A
(emphasis supplied).

141. This requirement embraces five separate elements, which include, *inter alia*, that the state
agency, not the claimant or employer, must "take the initiative in the discovery of
information," that the state agency is required to inform the claimant of information
obtained from other sources "to afford the claimant the opportunity to furnish any further
facts he may have," that "the investigation made by the agency must be complete enough
to provide information upon which the agency may act with reasonable assurance that its
decision is consistent with the unemployment compensation law," that "information must
be obtained promptly so that the payment of benefits is not unduly delayed," and that the
agency must give the worker a "reasonable opportunity" to obtain any evidence it
requires. Id.

142. The agency must give each claimant a written notice of any determination that adversely
affects the claimant's right to benefits, including if it "determines that he has not satisfied
a condition of eligibility" or "determines that an overpayment has been or orders
repayment or recoupment of any sum paid to him." Id.

143. The Social Security Act also requires the "[o]pportunity for a fair hearing, before an
impartial tribunal, for all individuals whose claims for unemployment compensation are
denied." 42 U.S.C. § 503(a)(3).

**B.  New York Procedure for Determining Claimant Eligibility**

144.  After claimants apply for unemployment insurance, the NYSDOL is required to issue a

Monetary Benefit Determination, which tells claimants if they have enough wages to

qualify for benefits, and if so, what the weekly benefit rate will be if NYSDOL decides

the claimant is eligible. New York State Unemployment Insurance Handbook ("UI

Handbook") at 11.

145.  The Monetary Benefit Determination is not a notice of eligibility. Id. The UI Handbook

instructs claimants that "[a]fter you receive the Monetary Benefit Determination, if we

find you are eligible your benefits will start. If we find you are not eligible, you will

receive another Notice of Determination in the mail that tells you why you are not

eligible." Id.

146.  The commissioner is required to make an "initial determination" of eligibility approving

or denying the claimant's unemployment insurance benefits. N.Y. Labor Law § 597; UI

Handbook at 11. This determination is to be based on all information the commissioner

requires concerning the claimant's prior employment. N.Y. Labor Law § 597(2)(a).

147.  When Defendants determine that a claimant filing for benefits is entitled, a Notice of

Potential Charges (LO 400) and a Notice of Protest (LO 400P) is sent to the claimant's

employer. NYS Department of Labor Unemployment Insurance Employer Guide ("UI

Employer Guide") at 5.

148.  The employer is required to respond to these notices within 10 calendar days if it knows

of any reason why the claimant should not collect benefits. Id. at 5-7. Reasons to contest

an employee's benefits include if the employer asserts that the claimant "[i]s an employee

of an educational institution and has reasonable assurance of employment in the next

academic period." Id. at 7.

149. If a claimant is eligible for benefits, "[their] first payment will generally be made two to three weeks from the time [they] file [their] claim." UI Handbook at 14.

150. The claimant or the employer can request a hearing to challenge the "initial determination." N.Y. Labor Law § 620.

151. An "overpayment" occurs when the NYSDOL determines that the claimant has received benefits to which the claimant was not entitled. UI Handbook at 31.

152. In the event of an overpayment determination, claimants will receive a written Notice of Determination in the mail telling them why they must repay benefits, how much they must repay, and how to pay the benefits back. Id. at 32.

### C. The "Reasonable Assurance" Exception for Nonprofessional Employees Between or Within Academic Years or Terms

153. The Federal Unemployment Tax Act ("FUTA") requires, as a condition for granting federal unemployment tax credits to employers in each state, that the state unemployment compensation law conform to certain minimum federal requirements. See 26 U.S.C. § 3304(a).

154. Under this statute, educational employees are categorized into two groups for determining unemployment eligibility: the federal unemployment eligibility criteria for professional educational employees (e.g. teachers or administrators) is set forth in 26 U.S.C. § 3304(a)(6)(A)(i); and the federal unemployment eligibility for non-professional employees such as the Plaintiffs (bus drivers and bus attendants), and others such as cafeteria workers, is set forth in 26 U.S.C. § 3304(a)(6)(A)(ii).

155. Both of these statutory provisions require denial of unemployment benefits to educational employees "between 2 successive academic years or terms … if such individual performs

such services in the first of such academic years or terms and there is a *reasonable assurance* that such individual will perform such services in the second of such academic years or terms." 26 U.S.C. § 3304(a)(6)(A)(i); 26 U.S.C. § 3304(a)(6)(A)(ii)(I) (emphasis supplied).

156.  Professional educational employees have an additional federal unemployment eligibility restriction which is not applicable to non-professional employees: professional educational employees are not eligible for unemployment benefits "if there is a contract … that such individual will perform services in any such capacity for any educational institution in the second of such academic years or term." 26 U.S.C. § 3304(a)(6)(A)(i).

157.  Thus, if Plaintiffs did not have reasonable assurance of employment in the fall of 2020 when they applied for unemployment benefits, Plaintiffs are entitled to unemployment compensation benefits under the same terms and conditions as other unemployed workers who lost their jobs during the Pandemic through no fault of their own and are ready, willing, and able to work. 26 U.S.C. § 3304(a)(6)(A)(ii)(I).

158.  To comply and conform with these federal unemployment law requirements, New York State enacted Labor Law § 590(10)-(11) in 1977, echoing the same eligibility terms set forth in the federal statute.

159.  On December 22, 2016, the U.S. Department of Labor (USDOL) issued Unemployment Insurance Program Letter (UIPL) No. 5-17, which provides the federal interpretation of the term "reasonable assurance" as used in 26 U.S.C. § 3304(a)(6)(A)(ii)(I), available at https://wdr.doleta.gov/directives/attach/UIPL/UIPL_5-17.pdf.

160.  In UIPL No. 5-17, USDOL set forth detailed requirements for determining school employees' unemployment eligibility involving "reasonable assurance" to "assist states in applying this interpretation consistent with federal law requirements" and requiring all

state unemployment agencies, including the NYSDOL, to "review their laws and procedures and make any changes needed to conform with this interpretation." Id. at 1.

161.     In determining whether a school employee has received "reasonable assurance," and is therefore ineligible for unemployment benefits, state agencies must first analyze each offer of reasonable assurance for three prerequisites: (1) it must be a genuine offer made by an individual with actual authority to offer employment; (2) the employment offered in the following academic year or term must be in the same capacity; and (3) the economic conditions of the job offered may not be considerably less in the following academic year or term (i.e. the claimant must earn at least 90% of the amount that the claimant earned in the first academic year or term). Id. at 4-5. Failure to meet even one of these prerequisites guarantees a claimant's eligibility. Id. at 4.

162.     If the prerequisites are met, NYSDOL then "must analyze the totality of circumstances to find whether it is *highly probable* that there is a job available for the claimants in the following academic year or term[.]" Id. at 6 (emphasis supplied).

163.     "As is generally the case with determinations of entitlement to [unemployment compensation], the state agency is responsible for determining whether a claimant has a 'reasonable assurance' of performing services the following academic year. This means neither the claimant nor the employer has the burden to establish the claimant has or does not have a 'reasonable assurance.'" Id. at 7.

164.     An employer's written statement explaining that reasonable assurance was given may be used in the state agency's totality of the circumstances analysis, but "the statement itself does not conclusively demonstrate that a claimant has a 'reasonable assurance' and state agencies must carry out the analysis required in this UIPL when determining if a claimant has 'reasonable assurance.'" Id. at 7.

165. On May 5, 2020, the U.S. Department of Labor issued UIPL No. 10-20, Change 1, "Unemployment Compensation (UC) for Individuals Affected by the Coronavirus Disease 2019 (COVID-19) – Interpretation of 'Between and Within Terms' Denial Provisions in Section 3304(a)(6)(A) of the Federal Unemployment Tax Act (FUTA)" to provide guidance to states on application of these provisions as they relate to individuals working in a nonprofessional capacity and for determining whether an individual has "reasonable assurance" of continued employment within the context of COVID-19, available at https://wdr.doleta.gov/directives/attach/UIPL/UIPL_10-20_Change_1.pdf.

166. The guidance was provided in recognition that "[m]any educational institutions are temporarily closing, changing semester and term dates, or changing dates for scheduled breaks in response to COVID-19." Id. at 2.

167. For this reason, the USDOL explicitly permits states to temporarily suspend the "between and within" denial provisions to nonprofessional staff. Id. at 5-6.

168. The USDOL clarified in UIPL No. 10-20, Change 1 that a "state must make a determination *at the time of filing* that reasonable assurances exist for employment in the fall semester or term based on information provided by the individual and the employing educational institution or school system." Id. at 6 (emphasis supplied).

   **D.  Pandemic Unemployment Assistance (PUA)**

169. As part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Congress created the Pandemic Unemployment Assistance ("PUA") program. 15 U.S.C. § 9021 et seq.

170. PUA provides financial assistance to people not eligible or covered by traditional state unemployment insurance. PUA eligibility is restricted to a person who "is not eligible for

regular compensation or extended benefits under State or Federal law…" 15 U.S.C. § 9021(a)(3)(A).

171. Accordingly, under law, Defendants must first determine whether an individual is eligible for regular unemployment insurance benefits, and if not, then determine whether that same individual qualifies for PUA benefits, 15 U.S.C. § 9021(a) (3)(A)(i)(1).

172. Defendants are required to review regular Unemployment Insurance claims that have been denied and identify individuals who are potentially eligible for PUA. UIPL 16-20, Change I, Attachment I, p. 2, Question 5.

173. In addition to being ineligible for Unemployment Insurance benefits, individuals must self-certify they are capable of working and that their lack of employment has a nexus with the Pandemic. Such a nexus may include, but is not limited to, workplace closures or layoffs, or rescinded job offers. See 15 U.S.C. § 9021(a)(3)(A)(ii)(I).

174. The New York State Department of Labor administers PUA and makes eligibility determinations. See 15 U.S.C. § 9021(f)(1).

175. When administering PUA, Defendants are required to follow 5 U.S.C. § 9021 and any additional instructions provided by the USDOL in UIPLs.

176. To facilitate the unemployment application process and the agency's eligibility determinations for these programs, Defendants developed a common application which was completed by each of the Plaintiffs.

177. The cost of PUA is fully covered by the federal government. See 15 U.S.C. § 9021(f)(2).

**E.  Pandemic Unemployment Compensation (PUC) and Lost Wages Assistance
(LWA)**

178.   Section 2123 of the CARES Act, 15 U.S.C. § 9023, established the Pandemic
Unemployment Compensation program ("PUC"), a temporary federal program that
provided additional benefits to Plaintiffs until July 31, 2020.

179.   There was no separate application process for PUC benefits; any claimant eligible for
unemployment insurance or PUA from the period of April 4 to July 25, 2020,
automatically received an additional $600 per week in PUC benefits.

180.   PUC benefits were designed to supplement a recipient's weekly receipt of regular
unemployment benefits or PUA. See 15 U.S.C. § 9023(b)(1) and § 9023(e)(2).

181.   The cost of PUC is fully covered by the federal government, 15 U.S.C. § 9023(d).

182.   After the PUC program ended in July 2020, the federal government instituted the Lost
Wages Assistance ("LWA") program to supplement the weekly benefit amount received
by all PUA and most unemployment insurance claimants as authorized under
the Stafford Act , 42 U.S.C. § 5174 (e)(2), and 44 C.F.R. § 206.119(c)(6)(ii).

183.   As with Plaintiffs' eligibility and receipt of PUC benefits, there was no separate
application process for receiving LWA benefits.

184.   All PUA and unemployment insurance claimants with a weekly benefit amount of at least
$100 were eligible to receive an additional $300 per week for any week between
approximately August 1, 2020 to September 15, 2020 during which they were eligible for
unemployment insurance or PUA benefits.

185.   Unless otherwise specified, Plaintiffs' applications and receipt of unemployment
insurance benefits or Pandemic Unemployment Assistance (PUA) and/or Pandemic

Unemployment Compensation (PUC) and/or Lost Wages Assistance (LWA) is generically referred to herein as "unemployment benefits."

## V.   FACTS

186.   In mid-March 2020, all public schools in New York State were closed due to the COVID-19 public health emergency by order of Governor Cuomo, and except for remote learning and special situations, these schools remained closed throughout the summer.

187.   Elementary, middle, and high schools initially closed for two weeks; these closures were incrementally extended throughout the spring as the Pandemic further consumed the nation.

188.   On May 1, 2020, Governor Cuomo issued an Executive Order closing schools in New York State for the remainder of the academic year. The decision to not host the vast majority of in-person summer school sessions followed soon after.

189.   In June 2020, when GCSD and other school districts were ostensibly offering their employees reasonable assurance of fall employment, all schools were closed with no known reopening date, and there was no known cure for COVID-19, no effective treatment, and no vaccines to guard against it.

190.   At that time, COVID-19 was spreading exponentially, shutting down schools, jobs, professional sports seasons, as well as closing the borders with Canada and Mexico. Ventilators, PPE (personal protective equipment), toilet paper, and Clorox wipes were in high demand and often unavailable. The national unemployment rate was over 11%.

191.   In prior years, each of the Plaintiffs had worked during the summer months providing services related to summer school operations for their employer, in addition to their regular employment activities performed during the academic year (between September and late June).

192.    Plaintiffs' summer work is separate from their employment during the academic year.

193.    In May or June each year, their employer typically requests that the named Plaintiffs, and others similarly situated, who were interested in extra work affirmatively "sign up" for summer school employment.

194.    In June 2020, each Plaintiff "signed up" for summer work with their employer.

195.    Plaintiffs subsequently learned from their employer that the vast majority of school operations would remain closed during the summer months of 2020 as a direct result of the COVID-19 public health emergency.

196.    As a result, Plaintiffs were unable to perform their intended summer school jobs and lost all their anticipated summer income to support themselves and their families during this period of the Pandemic.

197.    Plaintiffs experienced a substantial reduction in work hours and earnings, as their place of employment was closed as a direct result of the ongoing COVID-19 public health emergency.

198.    Because their summer jobs had been eliminated due to the Pandemic, each named Plaintiff applied for unemployment benefits from the NYSDOL online or by telephone in late June 2020.

199.    NYSDOL sent a timely Notice of Protest form to each Plaintiffs' employer, typically the day after each Plaintiff applied for unemployment benefits.

200.    Defendants began to pay unemployment benefits to Plaintiffs within days to three weeks of their applications without providing any hearings or notices of determination of eligibility to any of the Plaintiffs.

201.    Plaintiffs' employer faxed back the Notices of Protest for each Plaintiff, which were due back within 10 days of receipt, asserting that each Plaintiff should not receive

unemployment benefits because he or she was given an offer of reasonable assurance for the next term or semester.

202.   Defendants continued to pay unemployment benefits to Plaintiffs throughout the summer months, again without providing any hearings or notices of determination of eligibility to any of the Plaintiffs, even after receiving Notices of Protest from the Plaintiffs' employer. Defendants never informed Plaintiffs that their eligibility for unemployment benefits had not been fully verified, or that a pending eligibility issue might affect their entitlement and might result in an overpayment of their unemployment benefits.

203.   In September 2020, after receiving quarterly invoices, Plaintiffs' employer began requesting hearings for each Plaintiff, noting on each request that the reason for employer's delay in requesting the hearing was that "[b]enefits were paid to the claimant without the DOL issuing a notice of determination."

204.   In addition to weekly unemployment benefits, each Plaintiff automatically received PUC and/or LWA benefits, with amounts totaling several thousand dollars by the end of the summer.

205.   Plaintiffs ceased claiming or receiving unemployment benefits when the schools reopened, and they were able to return to work for their educational employer in mid-September 2020.

206.   Plaintiffs never received initial determinations of their eligibility. Instead, months after applying for and receiving unemployment benefits, months after Plaintiffs' employer sent NYSDOL Notices of Protest, and only after Plaintiffs' employer requested a hearing to contest the payment of benefits it had to learn about through quarterly invoices due to the absence of any notice from NYSDOL, beginning in October 2020 the NYSDOL issued Notices of Ineligibility for each Plaintiff.

207.   Defendants determined that Plaintiffs were not eligible for unemployment benefits because they had each received a form letter of purported "reasonable assurance" for fall educational employment from their employer in early June 2020.

208.   A true and accurate copy of the form letter sent to these particular Plaintiffs and used by Defendants in making their ineligibility determinations is attached hereto as Exhibit A.

209.   In their "Notice of Determination of Ineligibility or Disqualification," Defendants have sought to recover thousands of dollars of unemployment benefits by both voluntary and involuntary means:

   a.   Defendants have demanded repayment of $3,222 in unemployment, $2,400 in PUC, and $1,500 in LWA benefits, plus an additional $483.30 in civil penalties, totaling $7,605 from Plaintiff James Inzinga;

   b.   Defendants have demanded repayment of $3,433.75 in unemployment, $2,400 in PUC, and $1,800 in LWA benefits, plus an additional $515.06 in civil penalties, totaling $8,148.81 from Plaintiff Thelma Joy;

   c.   Defendants have demanded repayment of $3,000 in FPUC, and $1,800 in LWA benefits, totaling $4,800 from Plaintiff Michael Kelly, Sr.;

   d.   Defendants demanded repayment of $3,000 in unemployment, $1,800 of PUC, $1,800 of LWA, plus an additional $465 in civil penalties, totaling $7,065 from Plaintiff Susan Lake;

   e.   Defendants demanded repayment of $2,400 in PUC benefits and $1,800 in LWA benefits, totaling $4,200 from Plaintiff David Mason;

   f.   Defendants demanded repayment of $3,000 in PUC benefits and $1,800 in LWA benefits, totaling $4,800 from Plaintiff Theresa Scira;

   g.   Defendants have demanded repayment of $2,700 in unemployment benefits from Plaintiff Linda Thompson;

   h.   Defendants have demanded repayment of $2,584 in unemployment, $1,800 in FPUC, and $1,500 in LWA benefits, plus an additional $387.60 in civil penalties, totaling $6,271.60 from Plaintiff Barbara Dovidio.

210.   Plaintiffs have long since spent all assistance they received from the Defendants on food, clothing, shelter, and other necessities of life for themselves and their families.

211. In these Notices, Defendants claimed Plaintiffs are not eligible for benefits because they each had "reasonable assurance of performing services in a similar capacity at the same or another educational institution in the next academic year or term," and that Plaintiffs' employer had informed them of this available work.

212. Plaintiffs each requested a fair hearing to challenge the NYSDOL's Notice of Determination of Ineligibility before an ALJ pursuant to N.Y. Labor Law § 620.

213. After their hearings, an ALJ determined that Plaintiffs James Inzinga, Thelma Joy, and Barbara Dovidio each were ineligible for their unemployment benefits because they had "reasonable assurance" of fall employment from their employer.

214. In contrast, Plaintiffs Mason, Lake, and Scira, as well as other non-professional GCSD employees, and other non-professional employees throughout New York State who challenged Defendants' determination of "reasonable assurance" at fair hearings, were found eligible for unemployment benefits by ALJs.

## VI.   FIRST CAUSE OF ACTION VIOLATIONS OF TITLE THREE OF THE SOCIAL SECURITY ACT PURSUANT TO 42 U.S.C. §1983

215. Plaintiffs re-allege and incorporate all allegations in the preceding paragraphs as if fully set forth in this Cause of Action.

216. Defendants paid benefits to Plaintiffs without making the required determination of eligibility.

217. Defendants did not make the required determination of eligibility when Plaintiffs applied for unemployment benefits in June and July of 2020 and notified Defendants that they were employed as bus drivers and bus attendants for educational institutions in New York.

218.   Defendants did not make the required determination of eligibility after they received the

Notices of Protest filed by the Plaintiffs' employer asserting, contrary to law and

common sense, that Plaintiffs had "reasonable assurance" of employment in the fall of

2020, which, if true would make them ineligible for benefits.

219.   Instead, months after the Plaintiffs applied for unemployment benefits, months after

Defendants received Notices of Protest from Plaintiffs' employer, months after the

USDOL instructed Defendants to make a reasonable assurance determination for

nonprofessional employees of educational institutions at the time of application for

benefits in light of the Pandemic, and well after their last benefit payment, Defendants

issued each Plaintiff their first notice, a Notice of Ineligibility.

220.   Defendants issued these Notices of Ineligibility only after the Plaintiffs' employer

requested hearings to contest the Plaintiffs' benefit payments, citing as its reasons that (1)

Defendants paid benefits to each Plaintiff without issuing a Notice of Determination and

(2) that it provided reasonable assurance to Plaintiffs.

221.   Defendants' Notices of Ineligibility were sent between October 20, 2020 and February

10, 2021 in response to applications received on or about June 29, 2020 and July 8, 2020.

222.   Included in these Notices of Ineligibility were Defendants' demands that Plaintiffs repay

their benefits; most also assessed monetary penalties against Plaintiffs for making

purportedly false statements when they checked "yes" to lacking reasonable assurance of

having a job in the fall of 2020 in response to a form questionnaire.

223.   Defendants provided no indication in these Notices of Ineligibility of how they arrived at

their reasonable assurance determination other than to state that the Plaintiffs' employer

informed Plaintiffs that work would be available for them in the next academic year or

term.

224.  Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504 and 20 C.F.R.
§ 640.3(a) require that state unemployment compensation programs provide for such
methods of administration as will reasonably ensure the full payment of unemployment
benefits to eligible claimants when due and with the greatest promptness that is
administratively feasible.

225.  Defendants paid benefits to Plaintiffs without determining if they were eligible for them,
issued a determination of ineligibility only after their hand was forced by a hearing
request from the Plaintiffs' employer months after benefits were paid, and then demanded
and continue to demand that Plaintiffs repay these benefits, sometimes with ongoing
threats of collection and enforcement.

226.  Defendants issued their ineligibility determinations and engaged in collection efforts
without ever having made an initial determination or the necessary finding of reasonable
assurance as required by federal law.

227.  In June 2020, Plaintiffs were unemployed due to the pandemic closure of schools across
the state with no known reopening date. Defendants' conclusion months later that
Plaintiffs received "reasonable assurance" of fall employment is without basis in fact,
reason, or law.

228.  For these reasons, Defendants have failed to ensure the full payment of unemployment
benefits when due and with the greatest promptness that is administratively feasible in
violation of 42 U.S.C. §§ 501(a)(1), 20 C.F.R. § 640.3(a), and 20 C.F.R. § Pt. 602, App.
B, thus creating a privately enforceable cause of action pursuant to 42 U.S.C. § 1983.

229.  Additionally, in determining Plaintiffs James Inzinga and Thelma Joy were ineligible for
unemployment benefits, Defendants unlawfully conflated their membership in a union

which has a contract with their employer into a synonymous guarantee of "reasonable assurance."

230. Defendants have created unauthorized unemployment ineligibility criteria and policy which contravenes the applicable non-professional educational unemployment eligibility provisions of FUTA, 26 U.S.C. § 3304(a)(6)(A)(ii)(I), which are enforceable pursuant to 42 U.S.C. § 1983.

231. As a result of Defendants' unlawful ineligibility criteria and policy, Plaintiffs did not receive their benefits "when due" as required by the Social Security Act, 42 U.S.C. § 503(a)(1).

232. Defendants' violations of FUTA, the Social Security Act, and regulations have caused Plaintiffs injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

233. As a result of Defendants' violations of 26 U.S.C. § 3304(a)(6)(A)(ii)((I), 42 U.S.C. §§ 501(a)(1), and 20 C.F.R. § 640.3(a), the Court should Order that the Defendants cease their unlawful collection efforts and enjoin Defendants from any further recoupment efforts against Plaintiffs.

## VII.   SECOND CAUSE OF ACTION VIOLATIONS OF THE FOURTEENTH AMENDMENT, PROCEDURAL DUE PROCESS PURSUANT TO 42 U.S.C. § 1983

234. Plaintiffs each applied for and received unemployment benefits from Defendants during the summer of 2020.

235. Plaintiffs' receipt of unemployment benefits is a property interest protected by the due process requirements of the Fourteenth Amendment; the cornerstones of procedural due process are notice and opportunity for fair hearing.

236. Section 305(a)(3) of the Social Security Act affords an identical protection, requiring Defendants to provide an "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." 42 U.S.C. § 503(a)(3).

237. After Plaintiffs had returned to work and ceased receiving benefits, Defendants mailed most Plaintiffs a "Notice of Determination of Ineligibility" and a more detailed "Notice of Determination of Ineligibility or Disqualification" from October 20, 2020 to February 10, 2021. Plaintiff Thompson has yet to receive one.

238. In these Notices, Defendants claimed that each Plaintiff, with the exception of Plaintiff Thompson, "has reasonable assurance of performing services in a similar capacity at the same or another educational institution in the next academic year or term," and that Plaintiffs' employer had informed them of this available work.

239. As a matter of due process, an unemployment recipient must be given timely and adequate notice detailing the reasons for Defendants' overpayment determination and the recovery of unemployment benefits.

240. Providing Plaintiffs with a mere conclusory notice of unemployment overpayments is not enough to comply with due process procedural requirements.

241. To be constitutionally adequate, Defendants' ineligibility determination notices must provide Plaintiffs with enough information to understand the reasons for the agency's action.

242. Defendants' Notice of Determination of Ineligibility or Disqualification fails to detail the reasons for unemployment ineligibility in such a way as to permit a recipient to determine whether the Notice rests on incorrect or misleading factual premises, or on misapplication of applicable rules or policies.

243.   For instance, Defendants' notice scheme fails to provide any facts or details relied upon by Defendants in concluding that in June 2020 under the "totality of the circumstances" provision, Plaintiffs had received reasonable assurance of their fall educational employment.

244.   In this respect, Defendants' notice scheme fails to explain or provide any factual basis for concluding at the time of filing in June 2020 that Plaintiffs had received "reasonable assurance" of fall educational employment when all the schools in New York State were closed due to the Pandemic, with unknown reopening dates or conditions.

245.   Defendants' Notices of Determination of Ineligibility or Disqualification sometimes demand repayment of all unemployment benefits received but provide no details regarding Defendants' methods for calculating such overpayments or any information concerning the dates when these overpayments were purportedly made by Defendants or received by Plaintiffs.

246.   Without explanation, Defendants' Notice of Determination of Ineligibility or Disqualification periodically demanded some Plaintiffs repay only PUC or LWA benefits.

247.   There was no separate application process for PUC and LWA benefits, and Plaintiffs' receipt of these benefits was entirely dependent upon their eligibility and receipt of either Unemployment Insurance or PUA benefits.

248.   As part of Defendants' Notice of Determination of Ineligibility or Disqualification, constitutional due process requires Defendants to explain the method by which Plaintiffs' benefit overpayment amounts were calculated, and the underlying facts upon which those calculations were based.

249.   Constitutional due process further requires Defendants' notice scheme to provide reasons in sufficient detail so that a recipient can prepare a responsive defense.

250.   Overpayments of Unemployment Insurance, Labor Law § 597(4); Pandemic Unemployment Assistance, 15 U.S C. § 9021(d)(4); and/or Pandemic Unemployment Compensation, 15 U.S.C. § 9023(f)(2); and/or Lost Wages Assistance, Consolidated Appropriations Act, Sec. 262 PL 116-260, December 27, 2020, 134 Stat. 1182 received by recipients without fault may be waived by Defendants "when repayment would be contrary to equity and good conscience."

251.   As a matter of constitutional due process, Defendants' notice scheme fails to disclose these state and federal waiver provisions permitting Plaintiffs to prepare responsive defenses.

252.   Although Defendants' notice scheme invites recipients to request a fair hearing, Defendants improperly place the burden on the recipient to ascertain the facts or applicable rules or policies for receiving unemployment benefits when due process requires Defendants to supply these critical details.

253.   Defendants' failure to comply with these procedural due process requirements forces recipients to find information and assistance about Defendants' actions, leaving those without such resources or skills with enormous repayment obligations.

254.   Defendants' flawed notice scheme constitutes a violation of Plaintiffs' rights to procedural due process protected by the Fourteenth Amendment, creating a privately enforceable cause of action pursuant to 42 U.S.C. § 1983.

255.   Plaintiffs have no adequate remedy at law to redress the wrongs set forth in this Amended Complaint.

256. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the Defendants' acts and omissions as alleged herein, unless this Court grants the relief requested.

**WHEREFORE,** Plaintiffs respectfully request this honorable Court:

a. Assume jurisdiction of this case; and

b. Determine that the named individual Plaintiffs are representative of the class as defined herein and certify this matter as a class action; and

c. Order that Defendants cease their unlawful collection efforts and enjoin Defendants from any further recoupment efforts against Plaintiffs, which are in violation of Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504, and Plaintiffs' procedural due process rights as described in Plaintiffs' First and Second Causes of Action; and

d. Declare that Defendants' actions in paying benefits without making initial eligibility determinations for Plaintiffs violate Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504 and Plaintiffs' procedural due process rights; and

e. Declare that Defendants' actions in failing to notify Plaintiffs that their eligibility for benefits was contested for months after receiving Notices of Protest from Plaintiffs' employers violate Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504 and Plaintiffs' procedural due process rights; and

f. Declare that Defendants violated each Plaintiff's procedural due process rights as described in Plaintiffs' Second Cause of Action and enjoin Defendants from all future violations; and

g.   Retain jurisdiction of this matter until such time as Defendants have fully

complied with the provisions of the laws and civil rights laws of the United

States and United States Constitution, and for three years thereafter to ensure

continued compliance with the law; and

h.   Award Plaintiffs their attorneys' fees and costs under 42 U.S.C. § 1988; and

i.    Grant Plaintiffs any and all other relief this Court may deem proper.

Respectfully Submitted,

By: /s/Melinda L. Fithen
Melinda L. Fithen
mfithen@empirejustice.org
Peter O'Brian Dellinger
pdellinger@empirejustice.org
Erin Barry
ebarry@empirejustice.org
Empire Justice Center
1 West Main Street, Suite 200
Rochester, NY 14614
Telephone: (585) 454-4060

By: /s/ Vanessa Glushefski
Vanessa Glushefski
Kim Diana Connolly
Community Engagement Legal Clinic
University at Buffalo School of Law
507 O'Brian Hall, North Campus
Buffalo, New York 14260
(p): (716) 645-2167
(f): (716) 645-6199
law-covid@buffalo.edu
Counsel for Plaintiffs

Dated: January 21, 2022

EXHIBIT A



**GREECE CENTRAL SCHOOL DISTRICT**
Department of Human Resources
Address • 750 Maiden Lane, Rochester, NY 14615-1296
Mailing Address • P.O. Box 300, N. Greece, NY 14515-0300
Telephone • 585.966.2300 Fax • 585.581.8214
Web Address • www.greececsd.org

**Jeremy Smalline**
*Assistant Superintendent for Human Resources*

**Kathleen Graupman**
*Superintendent of Schools*

Auto Date

To: Name                                        Position: Position

Please be advised that the Greece Central School District with this letter is providing you with reasonable assurance that you will perform services for Greece Central School District in the capacity of Position for the school year 2020-2021, beginning on July 1, 2020 and ending on June 30, 2021.

This reasonable assurance will also continue for periods of employment immediately before and after any vacation and/or holiday term, or any state-mandated closures during the school year 2020-2021. The school calendar can be found on our website at http://www.greececsd.org under "Our District", "Publications & Calendars".

Therefore, and as noted above, you are presumed to have a reasonable assurance that you will perform services with the Greece Central School District and to resume work at the beginning of the ensuing year or term and immediately following vacation periods and/or holiday recesses, or any state-mandated closures unless otherwise noted.

This reasonable assurance is being transmitted to you for the sole and express purpose of complying with the revisions of the Federal Unemployment Act enacted under Public Law 94-566 and commonly referred to as the Unemployment Insurance Amendments of 1976. These amendments require each state to provide unemployment insurance coverage to local government employees which by companion legislation was enacted in 1977 by New York State.

Provided your services are satisfactory and unless you are notified otherwise, you are assured employment and are expected to report to work Start Date

I, Name, have read the above and understand its contents and:

_____ I will be reporting *for the 2020/2021 school year in the capacity of Position*

_____ I will **not** be returning *for the 2020/2021 school year, my last day of employment will be* _____

If we do not hear from you by **June 30th, 2020** we will take your lack of response as your interest to separate from the district and we will take the necessary action to remove you from our list of active employees. It is the employee's responsibility to respond to this letter by the deadline date; no further communication will be made by the district to solicit a response.

Signature: _____          Date: _____